Michael J. Raymond – 0009272
mraymond@raymondgreerlaw.com
**Raymond, Greer & McCarthy, P.C.**
7373 N. Scottsdale Road, Suite D-210
Scottsdale, Arizona 85253
(602) 274-0500

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Cincinnati Insurance Company, | **No.** |
| Plaintiff, | |
| vs. | **Cincinnati's Complaint for Declaratory Relief** |
| Hope Construction, LLC, an Arizona limited liability company; David Carpenter and Jennifer Carpenter, Husband and Wife; Chabad of Flagstaff, Inc.; Rabbi Dov Shapiro, | |
| Defendants. | |

## THE PARTIES, JURISDICTION, AND VENUE

1.     This is an action for declaratory relief under the Declaratory Judgment Act (18 U.S.C. §2201) and Rule 57, Fed. R. Civ. P., arising from a claim against a Commercial General Liability (CGL) and Umbrella Policy, policy no. EPP 036 11 86 issued to Hope Construction, LLC.

2.     Cincinnati is an Ohio corporation, with its principal place of business in Cincinnati, Ohio, authorized to do and doing business of insurance in the State of Arizona.

3.     Upon information and belief, Hope Construction, LLC (Hope) is an Arizona limited liability company with its principal place of business in Coconino County, Arizona.

4.     Upon information and belief, David and Jennifer Carpenter (Carpenters) are, and at all relevant times were, residents of Coconino County, Arizona.

5.     Upon information and belief, Chabad of Flagstaff, Inc. (Chabad) is an Arizona corporation, with its principal place of business in Coconino County, Arizona.

6.     Upon information and belief, Rabbi Dov Shapiro is, and at all relevant times, was a resident of Coconino County, Arizona.

7.     In a state court action filed in Coconino County Superior Court, Arizona, Case No.: S0300CV201900361, ("Underlying Complaint") Chabad sued Hope and the Carpenters, alleging multiple causes of action and seeking damages in part of $1.2 million. In addition, Rabbi Shapiro has asserted a defamation claim against the Carpenters.

8.     The CGL policy provides liability coverage with a limit of $1 million each occurrence and the Umbrella policy provides excess liability coverage with limits ranging from $1 million to $2 million dollars.

9.     This Court has jurisdiction under 28 U.S.C. §1332(a)(1) and 28 U.S.C. §§ 2201 and 2201 because a controversy exists between citizens of different states regarding the rights and obligations between the parties under an insurance policy issued to Hope and the amount in controversy exceeds $75,000.

10.    Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action occurred in the District of Arizona.

11.    An actual controversy exists between Cincinnati on the one hand and Hope and the Carpenters on the other hand as to whether the CGL and Umbrella policies provide liability coverage and a duty to defend for the claims

of Chabad against the Hope and Carpenter defendants with respect to the Underlying Complaint.

12.     Cincinnati is a party whose rights, obligations, and other legal relationships are affected by the insurance policy and, therefore, is entitled to file this declaratory judgment action under 28 U.S.C. § 2201.

## GENERAL ALLEGATIONS

13.     The CGL Policies, which are consecutive policies issued from November 15, 2015-November 15, 2018 and renewed on November 15, 2018 through the present, provide coverage for "bodily injury", "property damage" and "personal and advertising injury", as defined therein, subject to policy limits, for damages for which the insured is legally liable, and further subject to various conditions, limitations and exclusions, as follows:

*SECTION I – COVERAGES*

*COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1.     Insuring Agreement*

    *a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.*

    *b.     This insurance applies to "bodily injury" and "property damage" only if:*

        *(1)     The "bodily injury" or "property damage" is caused by an "occurrence"*

        *(2)     The "bodily injury" or "property damage" occurs during the policy period; and*

        *(3)     Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know per Paragraph*

**1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur in whole or in part .

**c.**    "Bodily injury" or "property damage" which:

    **(1)**    Occurs during the "coverage term", and

    **(2)**    Was not, prior to the "coverage term", known by you, per Paragraph **1.d** below, to have occurred;

        includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

**d.**    You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

    **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

    **(3)**    First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

    **(4)**    Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

    **(5)**    Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**2.**    **Exclusions**

This insurance does not apply to:

        ***

**j.**    **Damage to Property**

-4-

*"Property damage"* to:

       ***

 **(5)** *That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

 **(6)** *That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

 **k.** ***Damage to Your Product***

  *"Property damage" to "your product" arising out of it or any part of it.*

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.** ***Insuring Agreement***

 **a.** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.*

 **b.** *This insurance applies to "personal and advertising injury" only if:*

  **(1)** *The "personal and advertising injury" is caused by an offense arising out of your business;*

     ***

  **(b)** *The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and*

**2.** ***Exclusions***

*This insurance does not apply:*

 **a.** ***Knowing Violation of Rights of Another***

-5-

*"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".*

**b.      Material Published With Knowledge of Falsity**
*"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.*

\*\*\*

**f.      Breach of Contract**

*"Personal and advertising injury" arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".*

**SECTION I – WHO IS AN INSURED**

*1.*      *If you are designated in the Declarations as:*

\*\*\*

**c.**      *A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.*

**SECTION V – DEFINITIONS**

\*\*\*

**16.**      *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

**17.**      *"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:*

\*\*\*

**d.**      *Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

\*\*\*

**20.**      *"Property damage" means:*

**a.**      *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

**b.**   *Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.*

***

**25.**   *"Your product":*

**a.**   *Means:*

**(1)**   *Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*

**(a)**   *You:*

**(b)**   *Others trading under your name; or*

**(c)**   *A person or organization whose business or assets you have acquired; and*

**(2)**   *Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products*

**b.**   *Includes:*

**(1)**   *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*

**(2)**   *The providing of or failure to provide warnings or instructions.*

**c.**   *Does not include vending machines or other property rented to or located for the use of others but not sold.*

**26.**   *"Your work":*

**a.**   *Means:*

**(1)**   *Work or operations performed by you or on behalf; and*

**(2)**   *Materials, parts or equipment furnished in connection with such work or operations.*

**b.**   *Includes:*

*(1)*      *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and*

*(2)*      *The providing of or failure to provide warnings or instructions.*

14.     The Umbrella Policies which are consecutive policies issued from November 15, 2015-November 15, 2018 and renewed on November 15, 2018 through the present, provide coverage for "bodily injury", "property damage" and "personal and advertising injury", as defined therein, subject to policy limits, for damages for which the insured is legally liable, and further subject to various conditions, limitations and exclusions, as follows:

***COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM***

***SECTION I – COVERAGE***

     ***A.***      ***Insuring Agreement***

         ***1.***      *We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising" or "property damage" to which this insurance applies:*

            ***a.***      *Which is in excess of the "underlying insurance", or*

            ***b.***      *Which is either excluded or not insured by "underlying insurance".*

         ***2.***      *This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:*

            ***a.***      *The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and*

            ***b.***      *The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or*

    ***c.***  *The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations; and*

    ***d.***  *Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know per Paragraph **5.** Below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or that the "personal and advertising injury" offense had been committed in whole or in part.*

  ***3.***  *"Bodily injury" or "property damage" which:*

    ***a.***  *Occurs during the "coverage term", and*

    ***b.***  *Was not, prior to the "coverage term", known by you, per Paragraph **5.** Below, to have occurred;*

*includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.*

**B.**  **Exclusions**

*This insurance does not apply to:*
***

  2.  **Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**

  *"Personal and advertising injury":*

    ***a.***  *Arising out of breach contract, except an implied contract to use another's advertising idea in your "advertisement";*

    ***b.***  *Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";*
***

    ***d.***  *Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".*

-9-

***

**4.     Damage to Impaired Property or Property Not Physically Injured**

    **a.**     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work", or

    **b.**     A delay or failure by you or anyone actin on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**5.     Damage to Property**

    "Property damage" to property owned by any insured, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

**6.     Damage to your Product**

    "Property damage" to "your product" arising out of it or any part of it.

***

**14.     Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses**

    "Personal and advertising injury":

    **a.**     Arising out of oral and written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**C.     Defense and Supplementary Payments**

    **1.**     We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies. We will have to duty to defend

*the insured against any "suit" seeking damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance does not apply.*

**SECTION V – DEFINITIONS**

***

**11.**   *"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:*

    ***a.***   *It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*

    ***b.***   *You have failed to fulfill the terms of a contract or agreement,*

*if such property can be restored to use by:*

    ***a.***   *The repair, replacement, adjustment or removal of "your product" or "your work", or*

    ***b.***   *Your fulfilling the terms of the contract agreement.*

***

**16.**   *"Occurrence" means:*

    ***a.***   *An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or*

    ***b.***   *An offense that results in "personal and advertising injury".*

*All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:*

    ***(1)***   *The frequency of repetition;*

    ***(2)***   *The number or kind of media used; or*

    ***(3)***   *The number of claimants.*

17. *"Personal and advertising injury" means injury, including "bodily injury", including "bodily injury", arising out of one or more of the following offenses:*

\*\*\*

e. *Defamation of character, including oral or written publication in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

f. *Oral or written publication, in any manner, of material that violates a person's right of privacy;*

\*\*\*

19. *"Products-completed operations hazard":*

a. *Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:*

(1) *Products that are still in your physical possession; or*

(2) *Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:*

(a) *When all of the work called for in your contract has been completed.*

(b) *When all of the work to done at the site has been completed, if your contract calls for work at more than one site.*

(c) *When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

*Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.*

20. *"Property damage" means:*

a. *Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall*

*be deemed to occur at the time of the physical injury or destruction that caused it; or*

**b.** *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

*For the purposes of this insurance, "electronic data" is not tangible property.*

\*\*\*

**28.** *"Your product":*

**a.** *Means:*

**(1)** *Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed by:*

**(a)** *You;*

**(b)** *Others trading under your name; or*

**(c)** *A person or organization whose business or assets you have acquired; and*

**(2)** *Containers (other than vehicles), materials, part or equipment furnished in connection with such goods or products.*

\*\*\*

**b.** *Includes:*

**(1)** *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and*

**(2)** *The providing of or failure to provide warnings or instructions.*

**c.** *Does not include vending machines or other property rented to or located for the use of others but not sold.*

-13-

**29.**   *"Your work":*

    **a.**   *Means:*

        **(1)**   *Work or operations performed by you or on your behalf; and*

        **(2)**   *Materials, part or equipment furnished in connection with such work or operations.*

    **b.**   *Includes:*

        **(1)**   *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and*

        **(2)**   *The providing of or failure to provide warnings or instructions*

15.   Defendants Hope and the Carpenters qualify as "insureds" under both the CGL and Umbrella policies.

16.   In the Underlying Complaint against Hope, Defendant Chabad has asserted several general allegations including the following:

A.   Chabad entered into a cost-plus contract with Hope to construct a new building for the Chabad congregation at a cost of $4,444,530;

B.   Chabad's work was sub-standard, and Chabad repeatedly refused or failed to supply enough properly skilled workers or proper materials and failed to provide proper supervision;

C.   Hope did not provide the Architect with a submittal schedule;

D.   Hope did not provide a Control Estimate;

E.   Hope did not provide a Contractor's Construction Schedule / Critical Path Schedule after November 9, 2018;

1    F.    Hope did not achieve substantial completion by the Contract date of

2    September 15, 2018 or the extended deadlines of October 31, 2018 or by informal

3    deadlines of April 26, 2019, July 4, 2019 and July 25, 2019;

4    G.    On July 9, 2019, the Architect furnished a list of 609 items that have

5    to be completed, or corrected, for Hope to achieve completion.

6    H.    In July 2019 it became apparent to Chabad that the building could

7    not be completed by Hope in time for the scheduled opening of the building on

8    September 5, 2019. As such, Chabad terminated the Contract and was forced to

9    bring in another contractor to finish the building;

10    I.    Hope claimed charges of $5,729,657.34, an overrun of $1.2 million;

11    J.    Chabad asserts that it has been damaged to the extent that the cost

12    overruns were not reasonable and proper costs or due to negligence in the

13    original estimate;

14    K.    Chabad asserts as contract damages: repair costs or reduced value

15    from defective work; charges that were unnecessary or improper; delay

16    damages; extended overhead costs; loss of use of the building due to delays;

17    L.    Hope billed Chabad's insurance company $27,000 for work

18    performed to correct vandalism but Hope never furnished an accounting for use

19    of the insurance proceeds;

20    M.    Hope did not have the proper license to perform a construction job

21    in excess of $450,000 and as such is barred from claiming additional payments;

22    N.    Hope responded to a demand for a schedule by improperly alleging

23    it had achieved substantial completion and that it intended to file a lien and take

24    action to foreclose;

25    17.    Based on those and other allegations, Chabad alleges several counts

26    against Hope and Carpenter including (1) breach of contract–Hope, negligent

misrepresentation; (2) negligent misrepresentation–Hope and Carpenter; (3) declaratory judgment–Hope; (4) anticipatory breach of contract–Hope.

18.     Also, in Count Five of the underlying litigation, Rabbi Shapiro asserts that in a June 17, 2019 e-mail authored by David Carpenter, Shapiro was defamed by certain false statements which were "made maliciously and with intent to harm Rabbi Shapiro" and which caused considerable damage to Rabbi Shapiro's reputation.

19.     Based on the allegations set forth in ¶ 17, Rabbi Shapiro alleges a single count against the Carpenters for defamation.

## COUNT ONE
## DECLARATORY RELIEF REGARDING HOPE CONSTRUCTION

20.     Cincinnati incorporates by this reference the allegations in the preceding paragraphs.

21.     In essence, the gist of the claims against Hope allege liability based on its failure to complete the work in a timely manner, misrepresenting how much the building could be completed for, and charging inordinate sums as cost overruns, all of which caused economic harm to Chabad; and additionally allege declaratory relief based on Hope's failure to have the proper license to do the necessary work for the job.

22.     The claims asserted against Hope do not allege an "occurrence" nor do they constitute "property damage" as those terms are defined in the Cincinnati Policies, and as such do not constitute covered claims under the Insuring Clauses of the Policies.

23.     The claims asserted against Hope are barred from coverage by means of the business risk exclusions contained in the Policies, as set forth above.

24.     The declaratory relief count alleges against Hope does not seek "sums that the insured becomes legally obligated to pay as damages", and thus is not covered under the Cincinnati Policies.

25.     Because the Cincinnati CGL and Umbrella Polices do not cover the claims asserted in the claims of Chabad as against Hope, Cincinnati is not obligated to defend or indemnify Hope against the claims asserted therein.

26.     A dispute now exists between the parties as to whether the Cincinnati Policies provide coverage to Hope for the claims asserted by Chabad, a dispute properly resolved by this Court in this declaratory judgment action.

27.     Because this action arises out of contract, Cincinnati is entitled to an award of its reasonable attorneys' fees under A.R.S. §12-341.01(A).

WHEREFORE, Cincinnati respectfully requests that the Court enter judgment as follows:

1.     Declaring that the Cincinnati CGL and Umbrella Policies do not provide coverage to Hope for the claims Chabad has asserted against it in the underlying litigation;

2.     Declaring that Cincinnati has no obligation to defend or indemnify Hope for the claims Chabad has asserted against it in the underlying litigation;

3.     Awarding Cincinnati its taxable costs under A.R.S. §12-341;

4.     Awarding Cincinnati its reasonable attorneys' fees under A.R.S. 12-341.01(A); and

5.     Awarding Cincinnati such other and further relief as this Court deems just.

## COUNT TWO
### DECLARATORY RELIEF AGAINST CARPENTERS-NO DUTY TO INDEMNIFY RE COUNT TWO OF UNDERLYING COMPLAINT

28.     Cincinnati incorporates by this reference the allegations in the preceding paragraphs.

29.     Count Two of the Underlying Complaint–the negligent misrepresentation claim–is asserted both against Hope and  against Carpenter; the gist of the claim is that Carpenter misrepresented how much the building could be completed for and that Chabad relied on this representation in choosing Hope over other bidders, and that Hope is liable to Chabad to the extent of cost overruns of $1.2 million.

30.     The claims asserted in Count Two against Carpenter in Count Two of the Underlying Complaint do not allege an "occurrence" nor do they constitute "property damage" as those terms are defined in the Cincinnati Policies, and as such do not constitute covered claims under the Insuring Clauses of the Policies.

31.     The claims asserted against Carpenter in Count Two of the Underlying Complaint are barred from coverage by means of the business risk exclusions contained in the Policies, as set forth above.

32.     Because the Cincinnati CGL and Umbrella Polices do not cover the claims asserted in Count Two of the Underlying Complaint as against Carpenter, Cincinnati is not obligated to defend or indemnify Carpenter against the claims asserted therein.

33.     A dispute now exists between the parties as to whether the Cincinnati Policies provide coverage to Carpenter for the claims asserted in Count Two of the Underlying Complaint, a dispute properly resolved by this Court in this declaratory judgment action.

34.     Because this action arises out of contract, Cincinnati is entitled to an award of its reasonable attorneys' fees under A.R.S. §12-341.01(A).

WHEREFORE, Cincinnati respectfully requests that the Court enter judgment as follows:

1.     Declaring that the Cincinnati CGL and Umbrella Policies do not provide coverage to the Carpenters for the claims Chabad has asserted against it in Count Two of the underlying litigation;

2.     Declaring that Cincinnati has no obligation to defend or indemnify the Carpenters for the claims Chabad has asserted against it in Count Two of the underlying litigation;

3.     Awarding Cincinnati its taxable costs under A.R.S. §12-341;

4.     Awarding Cincinnati its reasonable attorneys' fees under A.R.S. 12-341.01(A); and

5.     Awarding Cincinnati such other and further relief as this Court deems just.

## COUNT THREE

35.     Cincinnati incorporates by this reference the allegations in the preceding paragraphs.

36.     Count Five asserts a claim by Rabbi Shapiro as against Carpenter for defamation.

37.     Rabbi Shapiro specifically alleges that he was defamed by certain false statements which were "made maliciously and with intent to harm Rabbi Shapiro" and which caused considerable damage to Rabbi Shapiro's reputation.

38.     Claims of libel constitute an enumerated "personal and advertising injury" offense as defined by the Policies.

39.    But both the CGL and/or Umbrella polices bar coverage for the knowing violation of rights of another, material published with knowledge of falsity, and for libel arising out of a breach of contract, each of which independently preclude coverage for the Carpenter's alleged liability with respect to Count Five of the Underlying Complaint.

40.    Because the Cincinnati CGL and Umbrella Polices do not cover the claims asserted in Count Five of the Underlying Complaint as against Carpenter, Cincinnati is not obligated to defend or indemnify Carpenter against the claims asserted therein.

41.    A dispute now exists between the parties as to whether the Cincinnati Policies provide coverage to Carpenter for the claims asserted in Count Five of the Underlying Complaint, a dispute properly resolved by this Court in this declaratory judgment action.

42.    Because this action arises out of contract, Cincinnati is entitled to an award of its reasonable attorneys' fees under A.R.S. §12-341.01(A).

WHEREFORE, Cincinnati respectfully requests that the Court enter judgment as follows:

1.    Declaring that the Cincinnati CGL and Umbrella Policies do not provide coverage to the Carpenters for the claims Rabbi Shapiro has asserted against it in Count Five of the underlying litigation;

2.    Declaring that Cincinnati has no obligation to defend or indemnify the Carpenters for the claims Rabbi Shapiro has asserted against it in Count Five of the underlying litigation;

3.    Awarding Cincinnati its taxable costs under A.R.S. §12-341;

4.    Awarding Cincinnati its reasonable attorneys' fees under A.R.S. 12-341.01(A); and

5.    Awarding Cincinnati such other and further relief as this Court deems just.

DATED this 5th day of September, 2019.

RAYMOND, GREER & MCCARTHY, P.C.

By___/s/ Michael J. Raymond_____
Michael J. Raymond
7373 N. Scottsdale Road, Suite D-210
Scottsdale, Arizona 85253
Attorneys for Plaintiff