IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cincinnati Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Hope Construction LLC, et al.,<br><br>Defendants. | No. CV-19-08260-PCT-DJH<br><br>**ORDER** |

The Court is in receipt of the parties' briefing (Docs. 29 and 30) addressing the issue of whether this Court should stay this action pending resolution of the underlying State Court Action.

**I.  BACKGROUND**

This declaratory action arises from an insurance coverage dispute. Plaintiff Cincinnati Insurance Company ("Cincinnati") is an insurance company that issued general commercial liability insurance and umbrella policies to Defendants Hope Construction, LLC and its principals David and Jennifer Carpenter (collectively "Hope Construction"). In 2017, Chabad entered into a cost-plus[1] contract with Hope Construction to construct a new building for the Chabad congregation. (Doc. 29-1 at 4).

    **A.  Underlying State Court Action**

On July 20, 2019, Chabad of Flagstaff, Inc. ("Chabad") and Rabbi Dov Shapiro

---

[1] Construction cost-plus contracts pay a contractor for all of its allowed expenses, typically up to a set limit. These costs include labor and materials, plus other costs incurred to complete the work. The "plus" refers to an additional payment that allows a contractor to make a profit.

("Rabbi Shapiro") initiated a lawsuit, *Chabad of Flagstaff, Inc., et al. v. Hope Construction, LLC, et al.*, No. S0300CV201900361 (Super. Ct. Coconino County, Ariz. July 20, 2019), for breach of contract, negligent misrepresentation, declaratory judgment, and defamation ("State Court Action"). (*Id.* at 3-13). Chabad alleges that Hope Construction's work was sub-standard, that it failed to complete the work in a timely manner, that it failed to supply proper materials and properly skilled workers for the project, and that there were cost-overruns. (*Id.* at 4-5). Chabad claims damages for repair and restoration costs, delay, and loss of use damages attributable to this sub-standard work. (*Id.* at 9). Additionally, Rabbi Shapiro alleges that Mr. Carpenter made libelous statements in an email about Rabbi Shapiro, including that Rabbi Shapiro had failed to pay Hope Construction despite the project being completed. (*Id.* at 13).

### B. Insurance Policies at Issue

Cincinnati had issued general commercial liability insurance and umbrella policies, which provided coverage for "bodily injury," "property damage," and "personal and advertising injury," as defined therein, subject to policy limits, for damages for which the insured is legally liable, and further subject to various conditions, limitations and exclusions. (Doc. 1 at 3-14).

The general commercial liability insurance policy covers "property damage" if it is caused by an "occurrence" and "personal and advertising injury" that "is covered by an offense arising out of your business." (*Id.* at 3, 5). "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured." (*Id.* at 6-7). An "occurrence" is defined as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions. . . ." (*Id.* at 6). "Personal and advertising injury" is defined as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]" (*Id.*) But the general commercial

liability insurance policy does not cover "property damage" to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (*Id.* at 5). Additionally, the general commercial liability insurance policy does not cover "personal and advertising injury" that is "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another"; that arises out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity"; or that arises out of breach of contract. (*Id.* at 5-6).

The umbrella policy covers "property damage" and "personal and advertising injury" if it is caused by an "occurrence." (*Id.* at 8). "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured." (*Id.* at 12-13). "Personal and advertising injury" is defined as "injury, including 'bodily injury', . . . arising out of one[:] . . . [d]efamation of character, including oral or written publication in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]" (*Id.* at 12). An "occurrence" is defined as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions that results in . . . 'property damage' [or] . . . 'personal and advertising injury[.]'" (*Id.* at 11). But the umbrella policy does not cover "personal and advertising injury" that arises "out of breach of contract"; arises "out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement'"; or "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another . . . ." (*Id.*) Additionally, the umbrella policy does not cover "property damage" if it is a "defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work', or . . . [a] delay or failure by you or anyone actin on your behalf to perform a contract or agreement in accordance with its terms." (*Id.* at 10).

    **C.**    <u>**Federal Court Action**</u>

Cincinnati asserts that there is no potential for coverage under either the umbrella

- 3 -

policy or the general commercial liability insurance policy for the claims in the State Court Action. Cincinnati argues that claims asserted against Hope Construction do not allege an "occurrence" nor do they constitute "property damage" or "personal and advertising injury" as those terms are defined in the policies, and as such do not constitute covered claims. Hope Construction disputes Cincinnati's coverage position and claims that Cincinnati should be required to defend all claims asserted against Hope Construction in the State Court Action.

On September 5, 2019, Cincinnati filed this action pursuant to the Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201, seeking a declaratory judgment that it has no obligation to defend or indemnify Hope Construction in the State Court Action. In other words, Cincinnati is asking this Court to decide whether the general commercial liability insurance and umbrella policies issued by Cincinnati to Hope Construction provide coverage for any of the claims in State Court Action.

On November 18, 2019, the Court ordered the parties to file briefs addressing: (1) what facts and evidence from the underlying State Court Action could impact a coverage determination here; (2) what specific policy provisions are at issue; (3) what are the potential fact disputes that could impact a coverage determination; and (4) whether this Court should stay this action pending the outcome of the State Court Action pursuant to an abstention doctrine. (Doc. 27). On November 21, 2019, Chabad and Rabbi Shapiro filed a declaration of Jason Hale, who is Chabad's owner's representative for the construction project at issue. (Doc. 28). Therein, Mr. Hale provides that he is "authorized to state on behalf of Chabad that Chabad has no claim in its lawsuit against Hope Construction for 'resulting damage to other property'" and if there were any such claim, Chabad waives it. (*Id.* at 4).

## II.   LEGAL STANDARD

The FDJA states that "[i]n a case of actual controversy within its jurisdiction [with noted exceptions] . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief

is or could be sought." 28 U.S.C. § 2201(a).  The FDJA "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  As the Ninth Circuit has explained, the FDJA "was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Amer. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir. 1995), o*verruled on other grounds by Gov't. Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (stating that "the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'") (internal citation omitted)).

The Ninth Circuit in *Countrywide* reiterated that "[g]enerally, district courts have a 'virtually unflagging obligation . . . to hear jurisdictionally sufficient claims.'" *Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 852 (9th Cir. 2011) (quoting *Snodgrass v. Provident Life & Accident Ins. Co*., 147 F.3d 1163, 1167 (9th Cir. 1998)).  However, "[t]he [FDJA] relaxes this obligation in cases where a party seeks declaratory relief." *Id*.  Therefore, "[i]n assessing actions for declaratory judgment, 'the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'" *Snodgrass*, 147 F.3d at 1166 (quoting *Wilton*, 515 U.S. at 288).

When determining whether to abstain from an FDJA action, the three "*Brillhart* factors remain the philosophic touchstone" of a district court's analysis. *Dizol*, 133 F.3d at 1225.  The three *Brillhart* factors are: (1) "avoiding 'needless determination of state law issues';" (2) "discouraging forum shopping';" and (3) "avoiding 'duplicative litigation.'" *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Dizol*, 133 F.3d at 1225).  The *Brillhart* court explained that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties" and that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."  316

U.S. at 495. "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'" *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994)).

## III.  DISCUSSION

### A.  Needless Determination of State Law Issues

Cincinnati brings this declaratory action to resolve one issue: whether the general commercial liability insurance policies issued by Cincinnati to Hope Construction provide coverage for any of the claims in State Court Action.  Insurance coverage and contract interpretation are fundamentally questions of state law and "federal courts should[] decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court unless there are circumstances present to warrant an exception to that rule." *Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 798–99 (9th Cir. 1995) (internal quotation marks omitted), *overruled in part on other grounds by Dizol*, 133 F.3d at 1227.  The Ninth Circuit has emphasized the general rule that insurance coverage actions belong in state rather than federal court and "[t]he traditional rule that 'states ha[ve] a free hand in regulating the dealings between insurers and their policyholders[.]'" *Karussos*, 65 F.3d at 799 (alteration in original) (quoting *SEC v. National Securities, Inc.*, 393 U.S. 453, 459 (1969)).

Moreover, if this action proceeds, the Court will be required to determine issues of state law when interpreting the policies at issue, any ambiguity therein, and whether the State Law Action claims are covered.  That determination may be needless in light of the proceeding in the state court forum in which these issues can be resolved.  For example, Cincinnati argues that Rabbi Shapiro's defamation claim against Mr. and Ms. Carpenter is excluded from coverage because of the "contractual liability exclusion[,] . . . which eliminates coverage for personal and advertising injury arising out of breach of contract . . . ." (Doc. 29 at 4).  However, to determine whether the contractual liability

exclusion applies, this Court would first have to determine whether there was a breach of contract. And this determination will almost certainly be resolved in the State Law Action. *See Karussos*, 65 F.3d at 798–799 (holding that state court is the preferred forum for resolving issues of insurance coverage). Accordingly, this factor weighs in favor of abstention.

### B.    Forum Shopping

The second *Brillhart* factor "usually is understood to favor discouraging an insurer from forum shopping, i.e., filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999). This action is reactive because Cincinnati filed it in response to Chabad and Rabbi Shapiro's claims in the underlying State Court Action, and it "could have filed a declaratory relief action in state court . . . where such action could have been related to and coordinated with the pending state court actions." *Great Am. Assur. v. McCormick*, 2005 WL 3095972, at *2 (N.D. Cal. Nov. 15, 2005). While Cincinnati is not currently a party to the State Court Action, the Court notes that it could have sought declaratory relief in state court, rather than filing the present action in federal court. *See Allstate Ins. Co. v. Tucknott Elec. Co.*, 2014 WL 5408324, at *3 (N.D. Cal. Oct. 23, 2014). However, the Court notes that it is a common practice for insurers to seek declaratory relief in federal court while underlying cases are proceeding in state court, and there is no evidence that Cincinnati is necessarily forum shopping here. Accordingly, this factor is neutral in the determination.

### C.    Duplicative Litigation

Cincinnati is not a party in the State Court Action. While the underlying State Court Action will determine Hope Construction's liability, it does not concern the "precise state law issues at stake in the present case," i.e., whether Cincinnati owes Hope Construction a duty to defend or indemnify under the insurance policies. Thus, although the underlying State Court Action may present some overlapping factual disputes, the state-law issues in the present case deal with the contested duties to indemnify and defend, not with Hope

Constriction's liability for any alleged underlying wrongful acts. Therefore, the third factor concerning duplicative litigation does not apply directly, since the coverage issues here are different than the liability issues in the state court action. *See AmTrust Int'l Underwriters Ltd. v. Silver Star Constr. Eng'g, Inc.*, 2018 WL 5819454, at *3 (C.D. Cal. Oct. 30, 2018). The standard for duplicative litigation is whether the same issues between the same parties are currently being litigated in state court. *See, e.g.*, *Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."); *Dizol*, 133 F.3d at 1225 (9th Cir. 1998) ("If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.").

However, the Court notes that whether declaratory relief is warranted might well turn on issues related to the underlying State Court Action. As previously discussed, for this Court to grant Cincinnati its requested relief and make a determination that the either there is no insurance coverage or that an exclusion applies, the Court would effectively be making a factual determination regarding the claims in the underlying State Court Action. This could lead to conflicting findings between this Court and the state court. The Court, therefore, cannot conclude as a matter of law that its ruling on Cincinnati's lawsuit for declaratory relief would not materially impact the underlying State Court Action. *Maryland Cas. Co. v. Witherspoon*, 993 F. Supp. 2d 1178, 1185 (C.D. Cal. 2014) ("Accordingly, the Court finds that this overlap in issues weighs heavily against allowing Plaintiff's declaratory judgment action to go forward, because it entangles the Court with the underlying state court action, as well as results in duplicative litigation."). Accordingly, this factor favors abstention.

### D.     **Other Factors**

In additional to the three bedrock *Brillhart* factors, the Ninth Circuit has suggested

other considerations that may weigh in favor of a district court's decision to dismiss or stay an action for declaratory relief: (1) whether the declaratory action will settle all aspects of the controversy; (2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; (4) whether the use of a declaratory action will result in entanglement between the federal and state court systems; (5) the convenience of the parties; and (6) the availability of and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225 n.5 (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994) (Garth, J., concurring)).

Because the parallel State Court Action involves overlapping issues and parties, there is a possibility of inconsistent factual and legal determinations. This could lead to "entanglement" between the two systems, and as such, consideration regarding the entanglement between the federal and state court systems weighs strongly in favor of abstaining from the instant action. *See Witherspoon*, 993 F. Supp. 2d at 1185 (expressing "great concern that exercising jurisdiction over this Action will result in entanglement between the federal and state court systems"). Likewise, the availability of and relative convenience of other remedies also weighs in favor of abstention because Cincinnati can seek declaratory relief in the State Court Action or wait until the State Court Action is resolved. Moreover, the burden on Hope Construction to litigate the coverage dispute in this Court while simultaneously defending against the claims in the State Court Action is high. *See Northfield Ins. Co. v. Civic Ctr. Hotel, LLC*, 239 F. Supp. 3d 1163, 1173 (N.D. Cal. 2017) ("Since Northfield is providing a defense, it suffers no harm from waiting until the state court action is resolved. But requiring defendants to litigate these matters now while defending the state court action is an expensive and unnecessary burden.").

As for convenience to the parties, a coverage determination would necessitate discovery from the parties involved in and would require this Court to delve into the factual dispute at the center of the State Court Action. As a result, the Court finds that the interests of judicial economy, as well as concerns about comity and fairness to the parties, further

weigh in favor of abstaining this action. *See Wilton*, 515 U.S. at 288 ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").

## IV. CONCLUSION

"[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2. As a parallel state proceeding provides the strongest basis for the Court's abstention, this action will be stayed, rather than dismissed, pending resolution of the underlying State Court Action.

Cincinnati may seek to lift the stay at the conclusion of the State Court Action or at such other time as it (or any other party) believes that circumstances have changed sufficiently to warrant adjudication of the claims. The parties shall file a Joint Status Report six months from the date of this Order, and every three months thereafter, briefly alerting the Court to any developments in the underlying State Court Action.

Accordingly,

**IT IS ORDERED** that this action is stayed pending resolution of *Chabad of Flagstaff, Inc., et al. v. Hope Construction, LLC, et al.*, No.: S0300CV201900361 (Super. Ct. Coconino County, Ariz. July 20, 2019).

**IT IS FURTHER ORDERED** that the Rule 16 Scheduling Conference set for November 21, 2019, is vacated.

…

…

…

…

…

…

**IT IS FINALLY ORDERED** that the parties shall file a Joint Status Report six months from the date of this Order, and every three months thereafter, regarding any developments in the underlying State Court Action.

Dated this 4th day of December, 2019.

Honorable Diane J. Humetewa
United States District Judge